IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| vs. ) | No. 06 C 5554 |
| ) | |
| JAMES R. TURCOTTE, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Petitioner James Turcotte filed this petition to vacate, set aside or correct his sentence, pursuant to 28 U.S.C. § 2255. Turcotte advances five arguments, three of which were previously addressed by this court in his motion for a judgment of acquittal, (United States v. Turcotte, 286 F. Supp. 2d 947 (N.D. Ill. 2003)), and again by the Seventh Circuit Court of Appeals. United States v. Turcotte, 405 F.3d 515 (7th Cir. 2005). For the following reasons, we deny Turcotte's petition.

## BACKGROUND

On January 31, 2001, Turcotte was charged in three counts of a five count indictment.[1] He was charged with conspiring to sell misbranded drugs, namely GHB, GBL and BD,[2] in violation of 21 U.S.C. §§ 331(a) and 333(a)(2), and 18 U.S.C. §§ 371 and 372; conspiring to possess, with intent to distribute, mixtures containing these drugs in violation of 21 U.S.C. §§ 841(a)(1) and 813; and possession, with intent to distribute, 60 gallons of GHB and GBL, also in violation of 21 U.S.C. §§ 841(a)(1) and 813. On November 22, 2003, after a jury trial,

---

[1]For the full background of this case, see United States v. Turcotte, 405 F.3d 515 (7th Cir. 2005).

[2]GBL and BD being alleged controlled substance analogues of GHB as defined by 21 U.S.C. § 802(32).

defendant was found guilty on all counts. The special verdict forms used by the jury found that GBL was a controlled substance analogue of GHB, but that BD was not. On July 7, 2004, this court denied Turcotte's post-trial motions, and on July 17, 2004, he was sentenced to serve 54 months' imprisonment for each count, with the sentences to run concurrently. These sentences were based on Turcotte's conviction as it related to GHB and GBL, but not BD.

Turcotte appealed, arguing, among other things, that he was convicted on insufficient evidence of scienter, that GHB was not properly scheduled as a controlled substance and thus GBL could not be regulated as a controlled substance analogue of GHB, and that the Controlled Substance Analogue Enforcement Act is unconstitutional on its face because it is too vague and failed to give sufficient notice of what activity it prohibited. The Seventh Circuit held that while this court erred in its jury instruction regarding the scienter instruction, that error was harmless. Turcotte, 405 F.3d at 527. The Seventh Circuit dismissed Turcotte's other arguments regarding the status of GHB and GBL and the constitutionality of the Analogue Act, and affirmed his conviction. *Id.* at 531-37.

Turcotte then filed the instant petition pursuant to 28 U.S.C. §2255. He presents five arguments. He argues that he was convicted without a basis in law, since the temporary scheduling of GHB as a controlled substance had expired and thus GBL could not legally be a controlled substance analogue. He claims that he was convicted on insufficient evidence of scienter. Turcotte further alleges that the application of the Controlled Substance Analogue Enforcement Act was unconstitutional for lack of notice and because the statute as applied and interpreted by the Seventh Circuit is void for vagueness. Turcotte also claims that his trial counsel and appellate counsel both rendered ineffective assistance. We do not address the first three arguments, as they were previously presented and dismissed by this court in the first

instance and by the Seventh Circuit. The Seventh Circuit has held that under the "law of the case" doctrine, once it "has decided the merits of a ground of appeal, that decision establishes the law of the case and is binding on a district judge asked to decide the same issue in a later phase of the same case, unless there is some good reason for reexamining it." United States v. Mazak, 789 F.2d 580, 581 (7th Cir. 1986). This doctrine applies to petitions filed pursuant to 21 U.S.C. § 2255. *Id.*; Fuller v. United States, 398 F.3d 644, 648 (7th Cir. 2005). We generally find no good reason for reexamining petitioner's previously addressed arguments. However, in one of his arguments, where petitioner claims that GHB is no longer a Schedule I drug but a Schedule III drug, and thus GBL cannot be considered a controlled substance analogue, petitioner now claims that the doctrine of abatement requires that his prosecution be dropped. Turcotte failed to raise this argument at trial or on appeal, but because he is alleging ineffective assistance of counsel we address this small point first and then turn to Turcotte's ineffective assistance claims.

## ANALYSIS

Section 2255 relief is proper when a criminal defendant's conviction or sentence is based on "an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." Bischel v. United States, 32 F.3d 259, 263 (7th Cir. 1994)(citations omitted).

### Abatement

Turcotte raises for the first time in his petition that the doctrine of abatement precludes his conviction. The common law doctrine of abatement holds that if an accused is being prosecuted for an act which, prior to the final resolution in the case, is no longer illegal, the prosecution is to be dismissed. United States v. Chambers, 291 U.S. 217, 226 (1934). On direct

appeal, Turcotte did not raise this doctrine, nor was it addressed by the decisions of this court or of the Seventh Circuit. Nor need it have been addressed as we find that the doctrine of abatement does not apply here.

First, regardless of petitioner's arguments that GHB is no longer a Schedule I drug, it is still listed as such. 21 CFR 1308.11(e)(1). While it is true that listed in Schedule III are drug products "containing [GHB], including its salts, isomers, and salts of isomers, for which an application is approved under section 505 of the Federal Food, Drug and Cosmetic Act," (21 CFR 1308.13(c)(6)), such as Xyrem, this does nothing to change the fact that GHB is still listed in Schedule I.

This is no different than the scheduling of tetrahydrocannabinols (THC) both naturally found in marijuana and synthetically made. THC is currently listed as a Schedule I drug, but dronabinol (Marinol), which is a mixture of synthetic THC and sesame oil, is listed as a Schedule III drug. 21 CFR 1308.11(d)(30); 21 CFR 1308.13(g)(1). The courts that have addressed this issue have found no problems with this dual classification. *See e.g.* Kuromiya v. United States, 37 F. Supp. 2d 717, 728 (E.D. Pa. 1999)(there is no violation of equal protection in placing Marinol (synthetic THC) and marijuana in different categories); John Doe, Inc. v. Gonzalez, 2006 U.S. Dist. LEXIS 44402 (D.D.C. 2006)(describing the transition of Marinol from Schedule I to III). Thus, the placement of Xyrem in Schedule III does not automatically remove GHB from Schedule I.

Second, even if GHB was rescheduled into Schedule III at some point after petitioner's criminal conduct, the abatement doctrine would not apply. Chapter 1, section 109 of the United States Code, the general saving statute, states:

> The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability.

This statute abolished "the common-law presumption that the repeal of a criminal statute resulted in the abatement of all prosecutions which had not reached final disposition in the highest court authorized to review them." Warden, Lewisburg Penitentiary v. Marrero, 417 U.S. 653, 660 (U.S. 1974). Petitioner argues that this provision only applies to "technical abatements," where a law was repealed only to be reenacted, and the criminal defendant's conduct had not technically occurred under the newly enacted law. We disagree. The Seventh Circuit has held that the general savings statute applies equally to outright repeals as it does to amendments to criminal statutes. United States v. Stewart, 865 F.2d 115, 118 (7th Cir. 1988). The limited exceptions to the general savings statute do not apply here. *See* Hamm v. Rock Hill, 379 U.S. 306, 314 (U.S. 1964)(savings statute does not apply where Civil Rights Act substitutes a right for what was formerly a crime, and thus prosecutions of former crime must be abated); United States v. Chambers, 291 U.S. 217, 224 (U.S. 1934)(general savings statute can only apply to congressionally-made law and cannot expand to those areas outside the constitutional authority of Congress, such as the adoption of the Twenty First Amendment).

Furthermore, any concern for the congressional intent to continue GHB (and by implication, GBL) prosecutions after the FDA's approval of Xyrem is belied by petitioner's own statements that after the placement of GHB in Schedule III, the criminal penalties for illegal use remained equivalent to those of a Schedule I drug (Petition, p. 8). Thus, though we find that GHB continues to be a Schedule I drug, even if it were found not to be, the abatement doctrine would not apply due to the general savings statute and Turcotte's prosecution would

not have been dismissed. The Supreme Court has held that 'nonconstitutional claims . . . can be raised on collateral review only if the alleged error constituted a 'fundamental defect which inherently results in a complete miscarriage of justice.'" Reed v. Farley, 512 U.S. 339, 354 (1994). We hold that because the doctrine of abatement does not apply to Turcotte's case, the failure of Turcotte's counsel not to raise it, or of this court and the Seventh Circuit to not address it, did not result in a fundamental defect.

### Ineffective Assistance of Counsel

Turcotte argues that he received ineffective assistance of counsel from both his trial and appellate lawyers. It is beyond argument that a criminal defendant is entitled to effective assistance of counsel at trial and on appeal. To establish that he was deprived of that right, petitioner must demonstrate that his counsel's performance fell below an objective standard of reasonableness, and that his deficient performance prejudiced petitioner's defense and consequently denied petitioner a fair trial or a fair appeal. Strickland v. Washington, 466 U.S. 668, 687-88, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984); Fountain v. United States, 211 F.3d 429, 434 (7th Cir. 2000). There is a presumption that counsel's performance was not deficient, and our review of trial and appellate counsel's performance is highly deferential. United States v. Meyer, 234 F.3d 319, 324-25 (7th Cir. 2000). Petitioner may defeat that presumption by pointing to specific acts or omissions that show that counsel's performance was outside the realm of "professionally competent assistance." Strickland, 466 U.S. at 690. To satisfy the prejudice prong, petitioner must show that absent his counsel's deficient performance the outcome would have been different. United States v. Starnes, 14 F.3d 1207, 1210 (7th Cir. 1994). But there is no prejudice, and thus no ineffective assistance of counsel, if counsel's acts or omissions had no effect on the judgment. Strickland, 466 U.S. at 691. Turcotte raised his ineffective assistance of trial counsel on appeal, but only in a cursory fashion. However, an ineffective assistance of

counsel claim may be raised on collateral review without having been brought on direct appeal. Massaro v. United States, 538 U.S. 500, 504, 155 L. Ed. 2d 714, 123 S. Ct. 1690 (2003). Thus, Turcotte's failure to sufficiently raise this claim on appeal does not result in its dismissal here.

What does result in the dismissal of Turcotte's claims is his failure to sufficiently demonstrate that his counsel's conduct fell below an objectively reasonable standard. Turcotte claims that his trial counsel, Stanley Hill, was ineffective for failing to consult with a certain attorney who had extensive experience in this area of law, Paul Anacker. Turcotte states that Hill initially discussed the case with Anacker, who offered his services as co-counsel *pro bono*, and required only that his travel and lodging expenses be covered. Hill admitted to Anacker after the discussion that he was not well-versed in this area of law and could use some help. However, Hill never contacted Anacker for his services. The case proceeded to trial and after the close of the prosecution's case, Turcotte realized that Hill did not use Anacker's help. Turcotte then called Anacker himself and Anacker stepped in as *pro bono* co-counsel *pro hac vice* for the remainder of the trial. Because of his late entry, the most Anacker could do was to make an oral motion for judgment of acquittal and file a memorandum in support. He filed a supplemental memorandum after trial, without having been present during the prosecution's case and without the benefit of a transcript. Turcotte alleges that if Anacker had been participating from the beginning, he would have submitted a pretrial motion on the temporary scheduling of GHB.

We do not see how Hill's decision not to have Anacker co-counsel the case with him could be anything more than a decision of trial strategy. The American Bar Association's Model Rules of Professional Conduct note that a lawyer need not necessarily have special training or prior experience to handle legal problems of a type with which the lawyer is unfamiliar. MODEL RULES OF PROF'L CONDUCT R. 1.1 cmt. (2007). While attorneys who do

not have experience in a certain area are required to bring themselves up to speed on the law, co-counseling with a more experienced attorney is but one way this can be accomplished. Counsel can also educate himself through other forms of study, such as reading articles, books, and conferring with experts. *Id.* Hill's conduct at trial demonstrated that he did so educate himself. Hill aggressively cross-examined the government's experts on the chemical structure of GHB in relation to that of GBL and BD, and put on forensic chemistry and medical experts of his own. This conduct resulted in the jury finding that BD was not a controlled substance analogue of GBL, a result that would not have come about but for Hill's conduct, as Anacker played no active role in the trial.

Hill's failure to file a pretrial motion challenging the scheduling of GHB also does not rise to the level of ineffective assistance. Such a motion is one of law, and would necessarily have been determined by this court, not by the jury. While it may have been better to file the motion before trial, if the omission does not result in prejudice to Turcotte, then there is no ineffective assistance of counsel claim. <u>Strickland</u>, 466 U.S. at 691. We note that Anacker's scheduling argument has now been heard three times, twice by this court and once by the Seventh Circuit, and has thrice been rejected. Thus, the fact that it was initially presented post-trial instead of pretrial was not prejudicial to Turcotte and would not have changed the result of his case.

Turcotte further argues that Hill was ineffective for not adequately attempting to exclude the government's expert witnesses under <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579(1993). He argues that if Anacker had been co-counsel, he would have moved to exclude the government's expert, DeFrancesco's testimony, as lacking scientific validity, and would have better discredited DeFrancesco on cross-examination because Anacker was more knowledgeable in the field. Turcotte fails to demonstrate how Anacker would have been

able to exclude DeFrancesco's testimony under Daubert. Turcotte argues that the government failed to demonstrate that DeFrancesco's use of a stick and letter diagram to represent molecular structure is a well-accepted method in the scientific community. But Turcotte does not argue that it is not, and the articles Turcotte attaches to his reply admit that reliance on such a diagram is "a long accepted convention in chemistry." Paul Anacker and Edward J. Imwinkelried, *The Confusing World of the Controlled Substance Analogue Enforcement Act Criminal Defense*, 42 CRIM. L. BULL. 744, 768 (Nov./Dec. 2006).

Turcotte argues that government's testimony that GHB and GBL were analogous failed to satisfy any of the Daubert guideposts for reliability because the conclusion that the substances were analogous was debated and litigated all the way up to the Seventh Circuit. But the fact that two experts disagree does not mandate exclusion under Daubert of either expert's testimony. United States v. Brumley, 217 F.3d 905, 911-12 (7th Cir. 2000). Turcotte further argues that DeFrancesco's "visual inspection" of the stick and letter diagram is akin to the visual inspection method that the Supreme Court disallowed in Kumho Tire v. Carmichael, 526 U.S. 137, 154 (U.S. 1999). But Kumho Tire did not stand for the proposition that visual inspection generally is not scientifically reliable, but that the conclusion of the expert in question was not reliable given that the expert's testimony relied on a number of implicit propositions which he failed to support. *Id.* at 153-54. Furthermore, while Turcotte argues that the stick and letter diagram method does not provide complete information about chemical structure, he does not demonstrate how this should have resulted in the exclusion of DeFrancesco's testimony under Daubert.

Turcotte's claim that Hill was ineffective because Anacker would have better tested the government's witnesses on cross-examination is equally flawed. Turcotte supports his argument not with a comparison between Hill's and Anacker's cross-examination of

DeFrancesco but with the government's direct of DeFrancesco and Anacker's re-cross of him (during a motion to suppress on an unrelated case). Nor does Turcotte point to any deficiencies in Hill's cross-examination, but simply argues that Anacker would have done a better job. But this is not evidence of Hill's ineffectiveness. That another lawyer might have performed better does not mean that Hill's conduct fell below an objectively reasonable standard. There are always better lawyers, and it is easy to question a lawyer's performance after the fact. This is something that we have been cautioned against doing when analyzing ineffective assistance of counsel claims. *See* Strickland, 466 U.S. at 689; United States v. Malone, 2007 U.S. App. LEXIS 9901 (7th Cir. 2007)(refusing to play "Monday Morning Quarterback" on ineffective assistance claims). We hold that Turcotte has failed to demonstrate that Hill's representation at trial was ineffective.

Turcotte also fails to show how his appellate counsel, Derek Safara, was ineffective. Turcotte points to several mistakes made by appellate counsel, such as the fact that appellate counsel believed that Turcotte had been convicted of distribution of BD when he had not, his knowledge of the purpose of the special jury verdict forms used by this court at Turcotte's trial, and his mistaken statement about the specific chemical structure of GHB. However, even if these mistakes were sufficient to render Safara's conduct to be below an objectively reasonable standard, a conclusion with which we disagree, Turcotte has failed to show how these mistakes prejudiced his appeal. The Seventh Circuit correctly noted in its decision that Turcotte had not been convicted of BD, and correctly analyzed the purpose of this court's special jury verdict forms. Turcotte, 405 F.3d at 520. The Seventh Circuit did not rely on the various chemical and structural similarities or differences between GHB and GBL because it noted that Congress had specifically targeted GBL as a controlled substance analogue of GHB, which necessarily put would-be distributors on notice of the illegal nature of their actions. *Id.*

at 531-33. Again, Turcotte argues that had Safara consulted Anacker, his appeal would have had a different result,[3] but he fails to show how Anacker's participation, given the Seventh Circuit's analysis and consideration, would have resulted in a different outcome. We hold that Turcotte has not made a sufficient showing that appellate counsel Safara rendered ineffective assistance.

Perhaps a postscript is appropriate. Without question, we have here a difficult and complex area of the law. This is now "the most recent chapter in one man's ill-fated personal and professional odyssey from bricklayer to bodybuilder to drug merchant." We are persuaded that defendant did not realize the seriousness of his conduct, that the penalties have had considerably greater consequences for him and his family than is normally the case, and that it is unlikely that he will again become involved in criminal conduct once this unfortunate experience is behind him. Those penalties were assessed, however, when the Guidelines were mandatory and cannot now be changed.

## CONCLUSION

For the foregoing reasons, we deny Turcotte's § 2255 petition.

JAMES B. MORAN
Senior Judge, U. S. District Court

June 21, 2007.

---

[3] The Seventh Circuit attempted to appoint Anacker as appellate counsel in this case – an appointment he had to decline for health reasons.